## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| MARYANN NAWROCKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-cv-01034 JCH |
| | ) | |
| BI-STATE DEVELOPMENT, | ) | |
| | ) | |
| Defendant, | ) | |

### MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Maryann Nawrocki for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the filing fee and will be granted leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a). Furthermore, the Court will direct plaintiff to show cause why this action should not be dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

### The Complaint

Plaintiff is a resident of the State of Missouri. She alleges that defendant Bi-State Development is incorporated in Missouri and has its principal place of business in St. Louis. Her complaint consists of a Court-provided civil complaint form, along with a number of attachments, which include: a letter to the Court, medical records, a petition for small claims court, medical bills, a letter from the Bi-State Development claims department, and a letter to Bi-State Development CEO John Nation.

Plaintiff's statement of claim alleges that Bi-State Development "may have encouraged" her podiatrist to add false medical information to plaintiff's file. (Docket No. 1 at 5). She also states that her cellphone is being monitored by the State of Wisconsin, and that the two states, presumably meaning Wisconsin and Missouri, have collaborated to deny her claim, despite knowing their responsibility.

Plaintiff provides further factual allegations in the attachments to her complaint.[1] She states that on October 9, 2017, she was at the Civic Center Transit Site, operated by defendant Bi-State Development. (Docket No. 1-1 at 1). She was on her way to the downtown library and asked a security guard employed by the Transit Site what bus she needed to take. The security guard directed her to the number 19 bus. As plaintiff headed toward that bus stop, she states that she encountered a man she describes as "homeless" sitting at the site. Plaintiff states that the man was acting "strange" and drinking from a green whiskey bottle concealed in a paper bag. Because the man was drinking from the bottle while it was in the bag, plaintiff states that the bag had become wet. This caused the bottle to fall from the paper bag and break against the "rock-hard concrete floor." Plaintiff alleges that a shard of broken glass hit the top of her right foot, causing severe pain. She states that this incident occurred on the premises of the Civic Center Transit Site.

Initially, plaintiff attempted to continue to the number 19 bus, but the pain forced her to stop and sit down. (Docket No. 1-1 at 2). At that point, she noticed that her foot was "bleeding profusely." Plaintiff went and spoke with a woman at the front desk, asking where she could file a complaint. The woman pointed to a back area, but first plaintiff had to use a restroom to clean the blood off her foot. This did not stop the bleeding, and blood "continued to gush out of"

---

[1] The Court will treat these attachments as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

plaintiff's foot. Plaintiff alleges that a security guard said: "That's too much blood, we need to call an ambulance." Plaintiff states that she believes the guard said this because he was culpable in failing to "remove the danger from the Civic Center Transit Site."

An ambulance was called, though plaintiff states the Fire Department reached her first. A bandage was applied to her foot. The ambulance arrived, and plaintiff was escorted to the vehicle by two firefighters. The female ambulance driver advised plaintiff that a vein had been cut in her foot and that she may need sutures. Plaintiff states she did not really want to go to the hospital, since she had no insurance, but that she decided to take care of her foot. The ambulance took her to Saint Louis University Hospital where a nurse cleaned the cut, numbed the area, and used two sutures to close the wound. (Docket No. 1-3 at 9). Plaintiff was also given a prescription for an antibiotic.

Due to this injury, plaintiff states that she has suffered permanent injuries to her foot. She claims continuing numbness, and also states she cannot let anything touch her foot, because the "slightest touch" causes her pain.

Plaintiff alleges that Bi-State Development is "responsible and culpable" for her damages. She states that Bi-State Development employs security guards to protect passengers using the public transit system. (Docket No. 1-3 at 10). She further claims the guards were negligent in allowing the "homeless man" to have the opportunity to injure her. She points out that drinking alcohol is prohibited at the Civic Center Transit Site and that the man who dropped the bottle should have been removed from the property. (Docket No. 1-3 at 17).

Elsewhere in the attachments to her complaint, plaintiff makes allegations that are not directly related to her alleged foot injury. For instance, plaintiff has attached medical records, along with a letter stating that the medical report includes "false information." (Docket No. 1-2

3

at 1). She alleges that her doctor submitted a fake medical report by recording that plaintiff had hammer toes and excessively pronated feet.[2] Plaintiff also mentions that she is being surveilled by the State of Wisconsin,[3] and that they may have interfered with her medical care. (Docket No. 1-2 at 1). She also intimates that the incident with the broken glass was not an accident, and that she was somehow singled out. (Docket No. 1-2 at 3; Docket No. 1-3 at 15).

Plaintiff filed her complaint with this Court on June 25, 2018. Since then, she has also filed a document entitled "Memorandum for Clerk." (Docket No. 3). The memorandum repeats plaintiff's earlier assertion that her medical case file contains false information. She requests that the Clerk of Court take pictures of her feet to add to her file. She also suggests that she is in danger, that the injury to her foot was not an accident, and that the State of Missouri might be participating in surveilling, stalking, and harassing her.

Plaintiff seeks $78,000 for the permanent damage she alleged she suffered to her right foot. (Docket No. 1 at 5).

**Discussion**

Plaintiff brings this action against defendant Bi-State Development, alleging that Bi-State Development failed to prevent her foot injury by allowing an intoxicated man to remain on their premises. Having carefully reviewed and liberally construed plaintiff's complaint, and for the reasons discussed below, the Court will order plaintiff to show cause as to why this case should not be dismissed for lack of subject matter jurisdiction.

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). *See also Gunn v.*

---

[2] Plaintiff does not name the doctor as a defendant.
[3] Plaintiff mentions that she has an ongoing federal case in Wisconsin, *Nawrocki v. Target*, though she does not provide further details.

*Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute"). Accordingly, the presence of subject matter jurisdiction is a threshold requirement that must be assured in every federal case. *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990). *See also Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) ("The threshold requirement in every federal case is jurisdiction and we have admonished the district court to be attentive to a satisfaction of jurisdictional requirements in all cases"). Due to the requirement of subject matter jurisdiction, the issue may be raised at any time, by any party or the court. *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 982 (8th Cir. 2009).

Federal courts have subject matter jurisdiction over both federal question and diversity of citizenship cases. *See Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*, 495 F.3d 1017, 1020 (8th Cir. 2007) (finding that subject matter jurisdiction is lacking if neither diversity of citizenship nor federal question jurisdiction applies); *McLaurin v. Prater*, 30 F.3d 982, 984-85 (8th Cir. 1994) (noting that Congress has directed that district courts shall have jurisdiction in both federal question and diversity cases). Here, plaintiff's complaint does not allege facts providing for either federal question or diversity of citizenship jurisdiction.

### A. Federal Question Jurisdiction

Federal question jurisdiction gives district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. *See also Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1188 (8th Cir. 2015). Whether a claim arises under federal law is determined by reference to the "well-pleaded complaint." *Great Lakes Gas Transmission Ltd. P'Ship v. Essar Steel Minn., LLC*, 843 F.3d 325, 329 (8th Cir. 2016). The well-pleaded complaint rule provides that jurisdiction exists only when a federal

question is presented on the face of a plaintiff's properly pleaded complaint. *Markham v. Wertin*, 861 F.3d 748, 754 (8th Cir. 2017). *See also Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014) ("Under the well-pleaded complaint rule, a federal question must exist on the face of the plaintiff's properly pleaded complaint in order to establish federal question subject matter jurisdiction").

Plaintiff's complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998). By and large, federal question jurisdiction is invoked by a plaintiff pleading a cause of action created by federal law, such as claims under 42 U.S.C. § 1983. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). However, in certain cases, federal question jurisdiction will also lie over state law claims implicating significant federal issues. *Id*. *See also Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) ("Federal jurisdiction may be found from a complaint if adjudication of a state claim would turn on a federal constitutional or other important federal question, even where only state law issues have been pled").

Plaintiff has not established a basis for federal question jurisdiction. Her complaint contains no allegations referring to a federal statute, a federal treaty, or a provision of the United States Constitution as being at issue in this case. She is also not suing the federal government, a federal official, or a federal agency. She does not claim that the alleged incident took place on federal property or involved federal employees.

A claim brought pursuant to 42 U.S.C. § 1983 "arises under federal law and will support federal-question jurisdiction pursuant to § 1331." *Convent Corp. v. City of North Little Rock, Ark.*, 784 F.3d 479, 483 (8th Cir. 2015). However, plaintiff's complaint lacks allegations to

support a § 1983 action, because she has not alleged a violation of her constitutional rights. *See Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008) ("Section 1983 creates a cause of action against a person acting under color of any statute of any State who deprives another of a federally protected right"). Plaintiff's claims are in the nature of a negligence action, with Bi-State Development allegedly liable under a theory of respondeat superior, since they employed the security guards who, according to plaintiff, failed to remove a dangerous situation from their premises. These claims, as stated by plaintiff, do not implicate any constitutionally-protected rights.

Similarly, plaintiff's claims do not involve any significant federal issues. As noted above, her allegations appear to form a state-law claim for negligence. She alleges that Bi-State Development had a duty to keep her safe while she was on its premises; that Bi-State's security guards allowed an individual to remain on premises who posed a danger to her; and that because of this individual's presence, she was injured. Nothing about these substantive allegations touches on any federal issue. Accordingly, plaintiff has failed to adequately allege federal question jurisdiction.

### B. Subject Matter Jurisdiction

"Under 28 U.S.C. § 1332(a), district courts have original diversity jurisdiction over civil actions when the matter in controversy exceeds $75,000, without considering interests and costs, and when the citizenship of each plaintiff is different from the citizenship of each defendant." *Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001). A complaint making a good faith allegation of the jurisdictional amount is sufficient to confer jurisdiction. *Scottsdale Ins. Co. v. Universal Crop. Prot. All., LLC*, 620 F.3d 926, 931 (8th Cir. 2010). However, a "complaint will be dismissed if it appears to a legal certainty that the claim is

really for less than the jurisdictional amount." *Id*. *See also Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002). As to diversity, there is complete diversity of citizenship when no defendant holds citizenship in the same state where the plaintiff holds citizenship. *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007).

Plaintiff seeks $78,000 in damages, which exceeds the monetary threshold. (Docket No. 1 at 5). She does not, however, establish diversity of the parties. Plaintiff states that she lives in Creve Coeur and is a Missouri citizen. (Docket No. 1 at 2-3). She also states that defendant Bi-State Development is incorporated and has its principal place of business in Missouri. (Docket No. 1 at 4). Based on these allegations, there is not complete diversity among the parties, and therefore, no diversity of citizenship subject matter jurisdiction.

Plaintiff's complaint does not establish either federal question or diversity of citizenship subject matter jurisdiction. As such, the Court will order plaintiff to show cause as to why this action should not be dismissed for lack of jurisdiction.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff shall show cause, in writing and **no later than twenty-one (21) days from the date of this Order**, why plaintiff's case should not be dismissed for lack of subject matter jurisdiction.

Dated this __20th__ day of August, 2018.

\s\ Jean C. Hamilton  
JEAN C. HAMILTON  
UNITED STATES DISTRICT JUDGE