# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MARYANN NAWROCKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-cv-01034 JCH |
| | ) |
| BI-STATE DEVELOPMENT, | ) |
| | ) |
| Defendant, | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff Maryann Nawrocki's response to the Court's order to show cause. (Docket No. 5). On August 20, 2018, the Court ordered plaintiff to show cause within twenty-one days why this action should not be dismissed for lack of subject matter jurisdiction. (Docket No. 4). Plaintiff has duly complied and filed a response. However, for the reasons discussed below, plaintiff has failed to adequately allege subject matter jurisdiction, and her case will dismissed. *See* Fed. R. Civ. P. 12(h)(3).

### The Complaint

Plaintiff is a citizen of the State of Missouri. (Docket No. 1 at 3). She alleges that defendant Bi-State Development is incorporated in Missouri and has its principal place of business in St. Louis. (Docket No. 1 at 2). Her complaint consists of a Court-provided civil complaint form, along with a number of attachments, which include: a letter to the Court, medical records, a petition for small claims court, medical bills, a letter from the Bi-State Development claims department, and a letter to Bi-State Development CEO John Nation.

Plaintiff's statement of claim, typed on the Court-provided civil rights complaint form, alleges that defendant Bi-State Development "may have encouraged" her "podiatrist to add fake,

false, medical information" to her "medical file." (Docket No. 1 at 5). She also states that her cell phone is being monitored by the State of Wisconsin, and that two states, presumably meaning Wisconsin and Missouri, have collaborated to deny her claim, despite knowing their responsibility.

Plaintiff provides further factual allegations in the attachments to her complaint.[1] She states that on October 9, 2017, she was at the Civic Center Transit Site, operated by defendant Bi-State Development. (Docket No. 1-1 at 1). She was on her way to the downtown library and asked a security guard employed by the Transit Site what bus she needed to take. The security guard directed her to the number 19 bus. As plaintiff headed toward that bus stop, she states that she encountered a man she describes as "homeless" sitting at the site. Plaintiff states that the man was acting "strange" and drinking from a green whiskey bottle concealed in a paper bag. Because the man was drinking from the bottle while it was still in the bag, plaintiff states that the bag had become wet, weakening the paper. This caused the bottle to fall from the paper bag and break against the "rock-hard concrete floor." Plaintiff alleges that a shard of broken glass hit the top of her right foot, causing severe pain. She states that this incident occurred on the premises of the Civic Center Transit Site.

Initially, plaintiff attempted to continue to the number 19 bus, but the pain forced her to stop and sit down. (Docket No. 1-1 at 2). At that point, she noticed that her foot was "bleeding profusely." Plaintiff went and spoke with a woman at the front desk, asking where she could file a complaint. The woman pointed to a back area, but first plaintiff had to use the restroom to clean the blood off her foot. This did not stop the bleeding, and blood "continued to gush out of" plaintiff's foot. Plaintiff alleges that a security guard said: "That's too much blood, we need to

---

[1] The Court will treat these attachments as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

call an ambulance." Plaintiff states that she believes the guard said this because he was culpable in failing to "remove the danger from the Civic Center Transit Site."

An ambulance was called, though plaintiff states the Fire Department reached her first. A bandage was applied to her foot. The ambulance arrived, and plaintiff was escorted to the vehicle by two fire fighters. The ambulance drivers inquired as to whether she wanted to go to the hospital. The "female ambulance driver" advised her that a vein had been cut in her foot and that she might need sutures. Plaintiff states that she did not really want to go to the hospital, since she had no insurance, but that she decided to take care of her foot. The ambulance took her to Saint Louis University Hospital where a nurse cleaned the cut, numbed the area, and used two sutures to close the wound. (Docket No. 1-3 at 9). Plaintiff was also given an antibiotic.

Due to this injury, plaintiff states that she has suffered permanent damage to her foot. She claims continuing numbness, and also states she cannot let anything touch her foot, because the "slightest touch" causes her pain.

Plaintiff alleges that Bi-State Development is "responsible and culpable" for her damages. She states that Bi-State Development employs security guards to protect passengers using the public transit system. (Docket No. 1-3 at 10). She further claims the guards were negligent in allowing the "homeless man" to have the opportunity to injure her. She points out that drinking alcohol is prohibited at the Civic Center Transit Site and that the man who dropped the bottle should have been removed from the property. (Docket No. 1-3 at 17).

Elsewhere in the attachments to her complaint, plaintiff makes allegations that are not directly related to her foot injury. For instance, plaintiff has attached medical records along with a letter stating that the medical report includes "false information." (Docket No. 1-2 at 1). She alleges that her doctor submitted a fake medical report by recording that plaintiff had hammer

3

toes and excessively pronated feet.² Plaintiff vigorously denies these afflictions. Plaintiff also asserts that she is being surveilled by the State of Wisconsin,³ and that they may have interfered with her medical care. (Docket No. 1-2 at 1). She also intimates that the incident with the broken glass was not an accident, and that she was somehow singled out. (Docket No. 1-2 at 3; Docket No. 1-3 at 15).

Plaintiff seeks $78,000 for the permanent damage she alleged she suffered to her right foot. (Docket No. 1 at 5).

**Plaintiff's Response to the Court's Order to Show Cause**

The Court received plaintiff's response to the order to show cause on September 5, 2018. The response consists of five typed pages. In her response, plaintiff states that her case should not be dismissed because defendant Bi-State Development is responsible for the damages she sustained to her foot. She states that the man who dropped the bottle that injured her foot was drinking alcohol, and alcohol is not allowed on Bi-State Development premises. (Docket No. 5 at 1). She further states that she is not a "Resident of Missouri" because she is "not on any lease in the State of Missouri, therefore, I am homeless." The last time she was "on a lease" was in Madison, Wisconsin. (Docket No. 5 at 2). Therefore, she asserts that this Court has jurisdiction based on diversity of citizenship.

Plaintiff also alleges that there is federal question jurisdiction because her case involves "Federal stalking laws." (Docket No. 5 at 4). Specifically, she cites the following statutes she believes are implicated in her case: 18 U.S.C. § 241;⁴ 18 U.S.C. § 242;⁵ 18 U.S.C. § 245;⁶ 18

---

² Plaintiff does not name her doctor as a defendant.
³ Plaintiff mentions that she has an ongoing federal case in Wisconsin, *Nawrocki v. Target*, though she does not provide further details.
⁴ 18 U.S.C. § 241 is a criminal statute titled: "Conspiracy against rights."
⁵ 18 U.S.C. § 242 is a criminal statute titled: "Deprivation of rights under color of law."
⁶ 18 U.S.C. § 245 is a criminal statute titled: "Federally protected activities."

4

U.S.C. § 249;[7] 18 U.S.C. § 1512;[8] 18 U.S.C. § 1513;[9] and 18 U.S.C. § 2261A.[10] Plaintiff alleges that her life, along with the lives of her children and grandchildren, has been threatened. She states that the incident at the Civic Center Transit Site was not an accident, but was an intentional and malicious attempt by the State of Wisconsin to force her to stop pursuing her claims.[11]

Much of plaintiff's response runs far afield from her initial complaint. The substance of her response is that she is the victim of an orchestrated effort by the State of Wisconsin to stop her from pursuing her federal claims there. On October 9, 2017, the day plaintiff injured her foot, she states she was on her way to the library to "print out evidence" in her favor. (Docket No. 5 at 5). While on this errand, a shard from a broken bottle cut her foot, an incident she attributes to an intentional act in which Bi-State Development participated. Plaintiff claims that she has received threatening text messages that are coming from a phone number with a Missouri area code. However, plaintiff insists the texts are actually coming from Wisconsin, which is using a Missouri number "as a disguise."

On September 7, 2018, plaintiff filed a document with the Court titled "Affidavit." (Docket No. 6). The document includes a picture of what appears to be plaintiff's feet. There is also a letter to the Court, in which plaintiff forcefully states that she does not have "hammer toes" or "severe pronation," and that to the contrary, she has "very attractive feet." Plaintiff indicates that the medical report stating she had hammer toes and pronation is a lie, and that the author of the report committed medical malpractice. She states that she has "inferred" that the false medical report is connected to the State of Wisconsin.

---

[7] 18 U.S.C. § 249 is a criminal statute titled: "Hate crime acts."
[8] 18 U.S.C. § 1512 is a criminal statute titled: "Tampering with a witness, victim, or an informant."
[9] 18 U.S.C. § 1513 is a criminal statute titled: "Retaliating against a witness, victim, or an informant."
[10] 18 U.S.C. § 2261A is a criminal statute titled: "Stalking."
[11] Plaintiff does not name the State of Wisconsin as a defendant. Even if she had, any suit against Wisconsin would likely be barred by the doctrine of sovereign immunity. *See Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) (stating that the "Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court").

**Discussion**

Plaintiff brings this action against defendant Bi-State Development, alleging that Bi-State Development failed to prevent her foot injury by allowing an intoxicated man to remain on their premises. In subsequent filings, plaintiff has expanded upon this initial complaint. She is now alleging that the injury to her foot was the result of a conspiracy between the State of Wisconsin and Bi-State Development to prevent her from pursuing her federal claims against Target. Having carefully reviewed and liberally construed both plaintiff's complaint and her response to the Court's order to show cause, the Court must dismiss plaintiff's case for lack of subject matter jurisdiction.

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). *See also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute"). Accordingly, the presence of subject matter jurisdiction is a threshold requirement that must be assured in every federal case. *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990). *See also Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) ("The threshold requirement in every federal case is jurisdiction and we have admonished the district court to be attentive to a satisfaction of jurisdictional requirements in all cases"). Due to the requirement of subject matter jurisdiction, the issue may be raised at any time, by any party or the court. *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 982 (8th Cir. 2009).

Federal courts have subject matter jurisdiction over both federal question and diversity of citizenship cases. *See Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*,

6

495 F.3d 1017, 1020 (8th Cir. 2007) (finding that subject matter jurisdiction is lacking if neither diversity of citizenship nor federal question jurisdiction is present); *McLaurin v. Prater*, 30 F.3d 982, 984-85 (8th Cir. 1994) (noting that Congress has directed that district courts shall have jurisdiction in both federal question and diversity cases). Here, plaintiff's complaint and response fail to allege sufficient facts to support either federal question or diversity of citizenship jurisdiction.

### A. Federal Question Jurisdiction

Federal question jurisdiction gives district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. *See also Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1188 (8th Cir. 2015). Whether a claim arises under federal law is determined by reference to the "well-pleaded complaint." *Great Lakes Gas Transmission Ltd. P'Ship v. Essar Steel Minnesota, LLC*, 843 F.3d 325, 329 (8th Cir. 2016). The well-pleaded complaint rule provides that jurisdiction exists only when a federal question is presented on the face of a plaintiff's properly pleaded complaint. *Markham v. Wertin*, 861 F.3d 748, 754 (8th Cir. 2017). *See also Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014) ("Under the well-pleaded complaint rule, a federal question must exist on the face of the plaintiff's properly pleaded complaint in order to establish federal question subject matter jurisdiction").

The complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal law." *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998). By and large, federal question jurisdiction is invoked by a plaintiff pleading a cause of action created by federal law, such as claims under 42 U.S.C. § 1983. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g &*

7

*Mfg.*, 545 U.S. 308, 312 (2005). However, in certain cases, federal question jurisdiction will also lie over state law claims implicating significant federal issues. *Id*. *See also Pet Quarters, Inc. v. Depository Trust & Clearing Corp.*, 559 F.3d 772, 779 (8th Cir. 2009) ("Federal jurisdiction may be found from a complaint if adjudication of a state claim would turn on a federal constitutional or other important federal question, even where only state law issues have been pled").

Plaintiff has not established a basis for federal question jurisdiction. Her initial complaint contained no allegations referring to a federal statute, a federal treaty, or a provision of the United States Constitution as being at issue in this case. She is not suing the federal government, a federal officer, or a federal agency. She does not claim the alleged incident took place on federal property or involved federal employees.

A claim brought pursuant to 42 U.S.C. § 1983 "arises under federal law and will support federal-question jurisdiction pursuant to § 1331." *Convent Corp. v. City of North Little Rock, Ark.*, 784 F.3d 479, 483 (8th Cir. 2015). However, plaintiff's allegations in her initial complaint do not support a § 1983 action because she does not allege a violation of her constitutional rights. *See Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008) ("Section 1983 creates a cause of action against a person acting under color of any statute of any State who deprives another of a federally protected right"). Rather, plaintiff's original allegations were in the nature of a negligence action, wherein Bi-State Development was allegedly liable for plaintiff's injuries on a theory of respondeat superior, as they employed the security guards who, according to plaintiff, failed to deal with a dangerous situation on their premises. This claim does not implicate any constitutionally-protected rights or involve any significant federal issues.

In her response to the Court's order to show cause, plaintiff now states that a number of federal criminal statutes are involved in her case. As noted above, these statutes are: 18 U.S.C. §

241; 18 U.S.C. § 242; 18 U.S.C. § 245; 18 U.S.C. § 249; 18 U.S.C. § 1512; 18 U.S.C. § 1513; and 18 U.S.C. § 2261A. Plaintiff asserts these statutes were violated, giving this Court jurisdiction.[12] The Court disagrees. Even assuming that plaintiff has properly alleged that Bi-State Development violated these statutes, the statutes she relies upon are criminal in nature and do not give her a private right of action.

"[T]he fact that a statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). Rather, like substantive federal law itself, a private right of action to enforce a federal law must be created by Congress. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). To that end, a criminal statute may provide an implied right of action if Congress intended to do so in enacting the statute. *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 407 (8th Cir. 1999). In order to determine whether a private right of action exists, a court must consider four factors:

> (1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; (2) whether Congress intended, explicitly or implicitly, to create such a remedy; (3) whether a private remedy is consistent with the underlying legislative scheme; and (4) whether a private right based on a federal statute would interfere with an area relegated to state law.

---

[12] The Court notes that the factual allegations contained in plaintiff's response, as well as the follow-up "Affidavit," appear to be frivolous. A complaint is frivolous if "it lacks an arguable basis either in law or in fact." *Nietzke v. Williams*, 490 U.S. 319, 327 (1989). Dismissal on the grounds of frivolity should only be ordered when legal theories are "indisputably meritless," or when the claims rely on factual allegations that are "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). "Clearly baseless" factual allegations include those that are "fanciful," "fantastic," and "delusional." *Id*. at 32-33. In citing the criminal statutes listed above, plaintiff asserts that she is the victim of a shadowy conspiracy perpetrated by the State of Wisconsin, perhaps with the help of the State of Missouri, to keep her from filing federal claims against Target in Wisconsin. (Docket No. 5 at 3-4). She states that she has received threatening messages and that her phone has been tapped. She also makes repeated mentions of false information being submitted into her medical file, and insists that the Court examine her feet in order to prove that she does not have hammer toes or pronation. (Docket No. 3). It is unclear why plaintiff believes this issue is relevant to her overall complaint. It is also unclear the role played by defendant Bi-State Development in this overarching plot. As far as can be determined, plaintiff holds them liable because she happened to cut her foot on their property on the day she was going to the library to work on her federal claim filed in Wisconsin. In sum, these factual allegations seem to be baseless and without merit.

*Id*. at 408-09 (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)). The "ultimate issue" of this analysis is the intent of Congress, and "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Thompson v. Thompson*, 484 U.S. 174, 179 (1988).

The seven statutes that plaintiff cites as the basis of this Court's federal question jurisdiction are all bare criminal statutes. All of them provide for prosecution by the United States; none of them, by their terms or structure, provide for a private right of action. *See U.S. v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) ("Courts have repeatedly held that there is no private right of action under [18 U.S.C.] § 241, even though the statute allows federal authorities to pursue criminal charges"); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (stating that only a United States prosecutor can bring a complaint under 18 U.S.C. §§ 241-242, and that the "statutes do not give rise to a civil action for damages"); *Storm-Eggink v. Gottfried*, 409 Fed. Appx. 426, 427 (2nd Cir. 2011) (stating that "nothing in the language or structure of [18 U.S.C.] § 241 suggests that Congress intended to create a private right of action"); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2nd Cir. 1994) (stating that 18 U.S.C. § 242 is a criminal statute that does not provide a private right of action); *Davis v. Norwood*, 614 Fed. Appx. 602, 605 (3rd Cir. 2015) (stating "that 18 U.S.C. § 242, which criminalizes the deprivation of rights under color of law, does not provide a private right of action"); *Brown v. Express Scripts*, 2018 WL 1295482, at *2 (E.D. Mo. 2018) (dismissing plaintiff's claim brought under 18 U.S.C. § 242 because plaintiff had no private right of action); *Roberson v. Pearson*, 2012 WL 4128303, at *1 (D. Minn. 2012) (stating that 18 U.S.C. § 245 is a federal criminal statute "that cannot provide the basis for any private cause of action"); *Banks-Bey v. Acxiom*, 2010 WL 395221, at *3 (N.D. Ohio) (dismissing claim under 18 U.S.C. § 245 because § 245 is a criminal statute for which

there is no private right of action); *Wolf v. Jefferson Cty., Mo.*, 2016 WL 233247, at *2 (E.D. Mo. 2016) (stating that 18 U.S.C. § 249 does not confer on the plaintiff a private right of action); *Sandifer v. Hopkins*, 2018 WL 321951, at *4 (E.D. La. 2018) (stating that 18 U.S.C. § 249 "is a criminal statute penalizing certain hate crimes…it does not confer private remedies"); *Horde v. Elliot*, 2018 WL 987683, at *18 (D. Minn. 2018) (stating that 18 U.S.C. § 1512 is "part of the obstruction of justice framework" and does not provide a private cause of action); *West v. Crnkovich*, 2013 WL 2295461, at *6 (D. Neb. 2013) (stating that there is no private right of action under 18 U.S.C. § 1512); *Ghost Bear v. South Dakota Dep't of Corr.*, 2011 WL 3608569, at *2 (D. S.D. 2011) (stating there is no private right of redress or private suit for a violation of 18 U.S.C. § 1513); *Rock v. BAE Sys., Inc.*, 556 Fed. Appx. 869, 871 (11th Cir. 2014) (stating that nothing in the plain language of 18 U.S.C. § 2261A indicates "that it is more than a bare criminal statute"); *Harris v. United States*, 686 Fed. Appx. 895, 899 (Fed. Cir. 2017) (stating that the district court properly found it did not have jurisdiction to decide plaintiff's claim under 18 U.S.C. § 2261A because it was a criminal statute that did not mandate money damages).

None of the criminal statutes that plaintiff has listed provide her with a private right of action. Accordingly, she has still not alleged that either federal law creates her cause of action or that her right to relief necessarily depends on the resolution of a substantial question of federal law.

The Court notes that plaintiff has not alleged that she is bringing her suit pursuant to § 1983. Regardless, even if she had, the result above would be the same. "In order to seek redress through § 1983…a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original). In other words, the violation of a federal statute does not automatically create a civil rights claim under §

1983. *Frison v. Zebro*, 339 F.3d 994, 998 (8th Cir. 2003). Instead, a court must first determine whether Congress intended a particular federal statute to create a federal right. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). "[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Id.* at 286. As discussed above, the seven criminal statutes relied upon by plaintiff do not provide for a private right of action. Accordingly, the statutes provide no basis for her suit, whether or not it is brought pursuant to § 1983.

Plaintiff's initial complaint contained no allegations establishing federal question jurisdiction. Her response to the Court's order to show cause cites to seven federal criminal statutes, none of which provide for a private right of action, and therefore are not a basis for federal question jurisdiction. Accordingly, the Court finds that plaintiff has not adequately asserted federal question jurisdiction in this matter.

### B. Subject Matter Jurisdiction

"Under 28 U.S.C. § 1332(a), district courts have original diversity jurisdiction over civil actions when the matter in controversy exceeds $75,000, without considering interests and costs, and when the citizenship of each plaintiff is different from the citizenship of each defendant." *Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001). A complaint making a good faith allegation of the jurisdictional amount is sufficient to confer jurisdiction. *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 931 (8th Cir. 2010). However, a "complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Id. See also Kopp v. Kopp*, 280 F.3d 883, 884 (8th Cir. 2002). As to diversity, there is complete diversity of citizenship when no defendant holds citizenship in the same state where the plaintiff holds citizenship. *OnePoint Solutions, LLC v.*

12

*Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). "State citizenship, for diversity purpose, requires an individual's physical presence in the state coupled with an indefinite intention there to remain." *Blakemore v. Missouri Pac. R.R. Co.*, 789 F.2d 616, 618 (8th Cir. 1986).

Plaintiff seeks $78,000 in damages, which exceeds the monetary threshold. (Docket No. 1 at 5). Her complaint, however, does not establish diversity of the parties. Plaintiff states in her verified complaint that she lives in Creve Coeur, Missouri, and that she is a Missouri citizen. (Docket No. 1 at 2-3). She also states that defendant Bi-State Development is incorporated and has its principle place of business in Missouri. (Docket No. 1 at 4).

In plaintiff's response to the Court's order to show cause, plaintiff now says her case should not be dismissed because she is "NOT a Resident of Missouri" and that she is "not on any lease in the State of Missouri." (Docket No. 5 at 1). She later states that she is not a citizen of Missouri and that the last time she was "on a lease" was in Madison, Wisconsin. (Docket No. 5 at 2).

The Court finds that plaintiff's response is insufficient to adequately establish diversity of citizenship jurisdiction. As noted above, in her complaint, plaintiff stated that she was a Missouri citizen and provided a Missouri home address. Plaintiff signed this complaint and declared under penalty of perjury that it was true and correct. (Docket No. 1 at 6). In doing so, she certified that her representations to the Court, including those regarding her citizenship, had evidentiary support. *See* Fed. R. Civ. P. 11(b)(3).

The alleged incident at the Civic Center Transit Site, which is the basis of plaintiff's lawsuit, took place on October 9, 2017, in St. Louis, Missouri. (Docket No. 1-3 at 3). In an attachment to her complaint, plaintiff has provided a petition for small claims court, dated November 16, 2017, in which she gives her address as Creve Coeur, Missouri. (Docket No. 1-3

at 1). Plaintiff has also attached a clinical summary dated December 13, 2017, which provides a Missouri address. (Docket No. 1-2 at 11). A letter from the Bi-State Development Claims Department sent to plaintiff has an address in Creve Coeur, Missouri. (Docket 1-3 at 4). Further, in plaintiff's recent filings to the Court, including on September 5, 2018 and September 7, 2018, she gives her address as Creve Coeur, Missouri.

Tellingly, plaintiff, while stating that she was "last on a lease" in Wisconsin, never alleges that she is a Wisconsin citizen. Indeed, she does not claim to be a citizen of any other state. She does not allege that she physically resides anywhere but Missouri, much less that she has an intention to remain in a different state. *See Blakemore*, 789 F.2d at 618.

Plaintiff has declared under penalty of perjury that she is a Missouri citizen. She has consistently provided the same Missouri mailing address. That address is also contained on numerous exhibits that plaintiff attached to her complaint, and which are part of the pleadings. Her response, which seems to disavow all that she has already alleged, never positively states that she is a citizen of any other state. Based on the foregoing, the Court finds that plaintiff has not adequately asserted diversity of citizenship jurisdiction.

Plaintiff's complaint and response to the Court's order to show both fail to establish jurisdiction, based on either a federal question or diversity of citizenship. As such, the Court must dismiss plaintiff's case for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

Accordingly,

**IT IS HEREBY ORDERED** that this action is **DISMISSED** without prejudice. *See* Fed. R. Civ. P. 12(h)(3). A separate order of dismissal will be entered herewith.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this   24th   day of September, 2018.

        \s\  Jean C. Hamilton
        JEAN C. HAMILTON
        UNITED STATES DISTRICT JUDGE